722 P.2d 359

**MARCAL LIMITED PARTNERSHIP, an Arizona limited partnership; Baytree Development Limited, an Arizona corporation; and Larry Pegg, Third-Party Plaintiffs/Appellants/Cross-Appellees,**

v.

**TITLE INSURANCE COMPANY OF MINNESOTA, a Minnesota corporation, Third-Party Defendant/Appellee/Cross-Appellant.**

**No. 2 CA–CIV 5562.**

Court of Appeals of Arizona, Division 2, Department A.

Feb. 13, 1986.

Review Denied May 20, 1986.

**192**

Law Offices of Frederick E. Kallof, P.A. by Frederick E. Kallof and David R. Mika, Phoenix, for third-party plaintiffs/appellants/cross-appellees.

O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears, P.A. by John H. Westover, Phoenix, for third-party defendants/appellees/cross-appellants.

FERNANDEZ, Judge.

Appellants Marcal Limited Partnership, Baytree Development Limited, and Larry Pegg (hereafter "Marcal"), seek reversal of the trial court's granting of judgment notwithstanding the verdict as to the jury's punitive damage award as well as its granting of a new trial on all other issues because of the court's failure to instruct on proximate cause. Appellee Title Insurance Company of Minnesota (hereafter "TICOM") has cross-appealed, contending the trial court erred as a matter of law in interpreting the underlying contract and in failing to grant judgment notwithstanding the verdict because of Marcal's failure to produce evidence of proximate cause. We reverse the granting of the new trial motion for failure to instruct on proximate cause but remand for a new trial because we find the court erred in its interpretation of the contract.

Suit was initially filed by P & F Corporation against Marcal for judicial completion of forfeiture of an apartment complex in Phoenix that P & F had originally sold to Larry Pegg under an agreement of sale. Pegg had conveyed the complex to Baytree, which then conveyed it to Marcal. Both Baytree and Marcal are limited partnerships in which Pegg is a general partner. Marcal counterclaimed against P & F and filed a cross-claim against TICOM for breach of contract, breach of fiduciary duty and negligence. TICOM was the escrow agent which handled the closing on the property and then served as collection agent for payments made under the agreement of sale. P & F and Marcal settled just prior to trial, with Marcal retaining the apartment complex by paying additional sums of money. The jury verdict in favor of Marcal on its claim against TICOM was for $145,275 in compensatory damages and $104,725 in punitive damages.

The agreement of sale was recorded August 24, 1979. It provided that the buyer assumed the balance of $582,182.27 due on an agreement of sale held by Stewart Title & Trust of Phoenix, Inc., with payments to begin on October 15, 1979. The agreement also provided that the buyer would pay $167,817.73 to P & F Corporation through monthly payments to TICOM beginning October 1, 1979.

The agreement of sale contains a clause which was the subject of dispute in this lawsuit. It reads as follows:

"The Buyer agrees to make the payments due on the Agreement for Sale assumed above through Minnesota Title Company, and Minnesota Title Company is not to accept payment on the deferred balance due Seller herein unless payment on the Agreement for Sale assumed herein is also paid."

P & F moved for summary judgment against Marcal in September 1982. Although the motion was denied in February 1983, the court ruled that the above provision meant that TICOM was not to accept payments on the first of the month unless the payment owed to Stewart Title on the fifteenth of the previous month had also been paid.

For just over a year Marcal made payments under the agreement, many of which

were apparently paid late.[1] On October 28, 1980, Marcal tendered a check to TICOM for the payments that were due in October. The check was returned to Marcal in early November with a form letter indicating that the bank had advised TICOM that the check was drawn on insufficient funds. TICOM employees testified that personal checks over a certain amount as well as payments on accounts in which insufficient funds checks had previously been received were sent by messenger to the appropriate bank to be exchanged for a cashier's check. There was also testimony that employees first called the bank to determine if there were funds to cover a check. The supervisor of TICOM's messengers testified that checks taken to the bank were entered on a transmittal form and that, if the bank refused to issue a cashier's check, the messenger had the check stamped or marked "NSF." No transmittal form listing Marcal's October 28 check was produced, and no one at TICOM could remember anything about that particular check. One of the two issues submitted to the jury was whether or not TICOM had presented the check to Marcal's bank before it was returned to Marcal.

Stamped on the back of the check are the words "cashier's check requested" and the signature of a TICOM employee. On the front of the check in the upper left hand corner are two handwritten notations, "NSF—31" and "NSF—11/4." No one was able to identify who had made the notations. A TICOM employee testified she made notations on checks if she was told by the bank that there were insufficient funds in the account. She did not know what the other employees did in such circumstances. There was conflicting testimony on how the bank marked checks that were dishonored.

An additional question with regard to that check was whether the check would have been honored even if TICOM had presented it. Larry Pegg admitted that there were insufficient funds in the ac-

count on October 28. He also testified that he had a line of credit at the bank in his name to cover checks drawn on his own account, on Baytree's account and on Marcal's account. A former officer of the bank testified that Pegg had a line of credit in his name and that it covered other accounts on which he signed checks. He testified that the arrangement Pegg had would have applied primarily to checks that were deposited. A bank operations officer testified that in 1980 the bank had no procedures whereby a teller could determine through the on-line computer terminal whether or not an account officer should be consulted on checks presented to be exchanged for a cashier's check.

The second issue submitted to the jury was whether or not Larry Pegg tendered a cashier's check to TICOM on November 12, 1980. He testified that he obtained the check to replace the October 28 check that TICOM had returned, and a cashier's check was admitted into evidence. Pegg testified that TICOM refused the check because it did not include the November 15 payment. The check included both October payments and the payment to P & F that was due on November 1. The basis for the refusal was TICOM's interpretation of the paragraph quoted above. No one at TICOM remembered Pegg tendering the check. A computer print-out on the Marcal account dated November 12 was admitted into evidence, and the testimony was that such documents were only produced when there was a customer inquiry.

On December 5, 1980, TICOM sent a notice of forfeiture to Marcal which showed that the October and November payments had not been made. It also showed that the December 1 payment had not been made, and the figure included the December 15 payment to Stewart Title. On December 17 TICOM recorded an affidavit of completion of forfeiture. On December 18 Pegg tendered a cashier's check for the total amount due, which TICOM refused because forfeiture had already

1. The record indicates two other notices of forfeiture were sent to Marcal earlier in 1980, both of which were timely cured. We have not been provided a complete payment record.

been completed. Suit was filed December 30, 1980.

### Marcal's Appeal Issues

■ Marcal contends that the trial court erred in granting TICOM's motion for new trial because of the court's failure to instruct the jury on proximate cause. The record shows that both parties submitted a number of lengthy proposed instructions. After unsuccessful attempts were made to simplify and consolidate the parties' instructions, the judge decided to prepare his own set. In an effort to simplify the issues for the jury, the court gave a formula instruction which did not mention proximate cause. TICOM, however, did not object to the instruction as required by Rule 51(a), Rules of Civil Procedure, 16 A.R.S. We also note that other jury instructions were given which touched upon proximate cause. Since the failure to give a more specific instruction does not constitute fundamental error, the trial court was incorrect in granting a new trial when TICOM failed to object to the instruction. The order for new trial thus must be reversed.

Marcal also contends the trial court erred in granting TICOM a judgment notwithstanding the verdict as to the punitive damages award. In light of our decision on the cross-appeal, we need not address this issue.

### TICOM's Issues on Cross-Appeal

TICOM contends on cross-appeal that the trial court erred in its interpretation of the paragraph in the agreement of sale quoted above. Alternatively, it contends that the interpretation of the clause should have been submitted to the jury.

As mentioned, the trial court ruled in February 1983 that the paragraph required TICOM to refuse payments due P & F on the first of the month unless the payments owed to Stewart Title on the fifteenth of the previous month had been paid. Larry Pegg testified he interpreted the provision as requiring him to have made the payment due on the fifteenth of the previous month before TICOM could accept the payment due on the first. TICOM construed the clause as requiring Marcal to make pay-ments on the first of each month which included the amount due to P & F on the first as well as the amount due to Stewart Title on the fifteenth of that same month. TICOM employees referred to the paragraph as a concurrency clause.

■ We find that the contract is ambiguous. *Abrams v. Horizon Corp.*, 137 Ariz. 73, 669 P.2d 51 (1983). There was conflicting extrinsic evidence on the meaning of the paragraph which requires resolution by the trier of fact. *Fairway Builders, Inc. v. Malouf Towers Rental Co.*, 124 Ariz. 242, 603 P.2d 513 (App.1979). We therefore remand for a new trial and instruct that this issue be submitted to the trier of fact to determine the intent of the parties.

TICOM also contends that its motion for judgment notwithstanding the verdict should have been granted on the additional ground that Marcal failed to produce any evidence that the October 28 check would have been honored by the bank if it had been duly presented. In support of its contention, TICOM cites *Prevo v. McGinnis*, 142 Ariz. 298, 689 P.2d 557 (App.1984). That case is not applicable to the situation involved here. In *Prevo* this court affirmed a summary judgment in an action to foreclose a deed of trust. The debtor had been informed that a cashier's check was required for payment. He not only tendered a personal check, but it was tendered after the date it was due. This court found the creditor's action in telephoning the bank to see if the check was good was sufficient, since no evidence had been offered to show the check was good.

■ In this case Pegg had not been instructed to pay by cashier's check and the check, although late, was not tendered in response to a specific written demand. In addition, there was sufficient evidence that the check might have been honored to warrant submission of the issue to the jury. Although Pegg admitted that there were insufficient funds in Marcal's account on October 28, there was no evidence as to the state of the account between that date and November 12, the date Pegg obtained a cashier's check for the same amount. Finally, there was testimony that Pegg had

a line of credit which covered Marcal's check as well. Although the bank officer testified that the arrangement would apply "primarily" to checks that were deposited, he did not rule out the possibility that it would apply to checks presented in exchange for a cashier's check. On appeal from the denial of a motion for judgment n.o.v., we review the evidence to determine whether reasonable minds can differ as to the inferences to be drawn from the facts. *Times Mirror Co. v. Sisk,* 122 Ariz. 174, 593 P.2d 924 (App.1978). We find that reasonable minds could differ as to whether or not the check would have been honored. The denial of the motion was proper.

The new trial order on the proximate cause issue is reversed, and the case is remanded for a new trial. Each party is to bear its own attorney's fees on appeal.

HATHAWAY, C.J., and HOWARD, P.J., concur.